**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MICROSOFT CORPORATION,          :
a Washington corporation,       :
                                :
                Plaintiff,      :
                                :       CIVIL ACTION NO.
        v.                      :       1:06-CV-1670-JOF
                                :
EARL MOSS, et al.,              :
                                :
                Defendants.     :

**OPINION AND ORDER**

This matter is before the court on Plaintiff's motion for summary judgment [53] and

Plaintiff's motion for sanctions and motion to compel production of documents [26].

Plaintiff, Microsoft Corporation ("Microsoft"), filed suit against A&D Computers, LLC, and

Tony Moss, and Daphne Moss, individually and collectively d/b/a Affordable Computers,

n/k/a A&D Computers, LLC (collectively, "Defendants"), and Earl Moss, individually and

d/b/a Affordable Computers, n/k/a A&D Computers, LLC,[1] pursuant to The Copyright Act,

17 U.S.C. §§ 101, *et. seq.*, and the Lanham Act, 15 U.S.C. §§ 1114, *et. seq.* Plaintiff also

brings state law claims pursuant to Georgia common law and statutory unfair competition,

---

[1]Defendants registered Affordable as A&D Computers, LLC, with the Georgia
Secretary of State in November 2006.  Nothing changed with respect to the business except
the name.

O.C.G.A. §§ 23-2-55, *et. seq.*, and Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. §§ 10-1-370, *et. seq.*

## I.   Background

### A.   Procedural History

On July 14, 2006, Microsoft filed a complaint against Earl Moss, individually and d/b/a Affordable Computers, for distributing counterfeit Microsoft software and sought damages, an accounting, the imposition of a constructive trust upon Affordable's illegal profits, and injunctive relief.  Earl Moss answered on August 21, 2006.  Plaintiff moved to amend its complaint on October 20, 2006 and January 16, 2007 to add Tony and Daphne Moss and A&D Computers, LLC, as proper parties; the court granted both motions on February 13, 2007.  These parties filed an answer on March 2, 2007 and denied all wrongdoing.

On March 23, 2007, counsel for Earl Moss and Defendants filed a motion to withdraw as counsel.  Meanwhile, Plaintiffs moved for summary judgment on May 8, 2007 against A&D Computers, LLC, and against Tony and Daphne Moss, individually and d/b/a Affordable Computers, n/k/a A&D Computers, LLC, and Defendants responded on May 29, 2007.[2]  The court granted defense counsel's motion to withdraw on June 1, 2007, and reminded Defendants that corporations must be represented by counsel in the Northern

---

[2]Plaintiffs did not include Earl Moss individually or d/b/a Affordable Computers n/k/a A&D Computers, LLC in their Motion for Summary Judgment.

District of Georgia and that A&D Computers, LLC's failure to obtain counsel could result in a default being entered against them. The order instructed Defendants and Earl Moss to notify the court within thirty days of new counsel.

Defendants have failed to notify the court of new counsel. A corporation cannot represent itself in court without an attorney, and failure to comply with this rule can result in default being entered against the corporate party. *Bakewell v. Fed. Fin. Group, Inc.*, No. 1:04-CV-3538-JOF, 2007 U.S. Dist. LEXIS 22478, *5 (N.D.Ga. Mar. 28, 2007) (citing Local Rule 83.1(E)).[3] Thus, Defendant A&D Computers, LLC, has defaulted, and the court deems it to have admitted all allegations in Plaintiff's amended complaint. However, Earl, Tony, and Daphne Moss remain as defendants, individually and collectively d/b/a Affordable Computers, and, as individuals may proceed pro se. As such, the court will address Plaintiff's motion for summary judgment against Tony and Daphne Moss.

Pursuant to Local Rule 56.1(B)(1) Plaintiff filed a statement of material facts along with its Motion for Summary Judgment. Local Rule 56.1(B)(2) directs:

> This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to the evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact;

---

[3]"[A] corporation may only be represented in court by an attorney, [an] attorney must sign all pleadings submitted to the court, . . . a corporate officer may not represent the corporation in court unless that officer is also an attorney licensed to practice law in the state of Georgia, and . . . failure to comply with this rule could result in a default being entered against the corporate party . . . ." L.R. 83.1(E)(2)(B)(I) (N.D. Ga.).

3

or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 (B)(1).

Here, Defendants' Response to Plaintiff's Motion for Summary Judgment submits that a genuine issue of material fact "remains as to whether Defendants installed Microsoft products onto any computers sold to the public." Yet, Defendants assert no new facts and rest largely on denials present in their answer.[4] Of the thirty undisputed facts enumerated by Microsoft, Defendant admits twelve, claims insufficient knowledge to admit or deny thirteen,[5] and disputes three without reference to any specific supporting evidence.[6] Since

---

[4]A party seeking summary judgment must show, using "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . that there is no genuine issue as to any material fact and that [they are] entitled to a judgment as a matter of law." *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (U.S. 1986)). The party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). "Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment." *Id.*

[5]Local Rule 56.1(B)(2)(a)(4) states that "[t]he response that a party has insufficient knowledge to admit or deny is not an acceptable response [at the summary judgment stage] unless the party has complied with the provisions of Fed. R. Civ. P. 56(f)." Rule 56(f) allows a respondent to offer affidavits stating the reason why it cannot admit or deny movant's statement of fact. Defendant's have not presented any such affidavits, and thus these thirteen responses act as admissions as a matter of law.

[6]Local Rule 56.1(B)(2) requires a respondent to refute movant's facts with "concise responses supported by specific citations to evidence." Here, Defendant relies on "deposition testimony." The court will not search the depositions in this case and create a response on Defendant's behalf. Thus, the court deems these statements admitted by operation of law.

4

Defendants have not controverted these material facts as set forth in Microsoft's statement of material facts, these facts will be deemed to be admitted by operation of law, and the court will rely on them in ruling on Plaintiff's Motion for Summary Judgment.

### B.    Facts

Plaintiff Microsoft is an international corporation, headquartered in Redmond, Washington, that develops, advertises, and licenses computer software programs to be distributed throughout the United States and the world.[7]

---

[7]Microsoft is the sole owner of all right, title and interest in, and to copyrights in the following software, which are registered with the United States Copyright Office in compliance with the Copyright Revision Act of 1976 (17 U.S.C. §§ 101, *et seq.*) and Copyright Office regulations: "Windows XP Professional" (Copyright Registration No. TX 5-407-055); "Office Professional Edition 2003" (Copyright Registration No. TX 5-837-617); "Office Excel 2003" (Copyright Registration No. TX 5-837-636); "Office Outlook 2003" (Copyright Registration No. TX 5-900-087); "Office PowerPoint 2003" (Copyright Registration No. TX 5-852-649); "Office Word 2003" (Copyright Registration No. TX 5-900-088); "Publisher 2003" (Copyright Registration No. TX 5-837-618); "Business Contact Manager for Outlook 2003" (Copyright Registration No. TX 5-877-613); and "Access 2003" (Copyright Registration No. TX 5-901-713).

Microsoft is the sole owner of all right, title and interest in, and to the following, federally-registered trademarks and/or service marks:  Trademark and Service Mark Registration No. 1,200,236 ("MICROSOFT") for computer programs and computer programming services; Trademark Registration No. 1,256,083 ("MICROSOFT") for computer hardware and software manuals, newsletters and computer documentation; Trademark Registration No. 1,872,264 ("WINDOWS") for computer programs and manuals sold as a unit; Trademark Registration No. 2,744,843 (COLORED FLAG DESIGN) for computer software;  Trademark Registration No. 1,475,795 ("POWERPOINT"), for pre - recorded computer programs recorded on magnetic disks; Trademark Registration No. 1,741,086 ("MICROSOFT ACCESS"), for computer programs for use with databases and manuals sold as a unit; and Trademark Registration No. 2,188,125 ("OUTLOOK"), for computer programs, specifically programs providing enhanced electronic mail and scheduling capabilities and instructional manuals sold as a unit.

Microsoft packages and distributes its software with user manuals, certificates of authenticity ("COA"), end user license agreements, and other documentation.  In order to prevent pirating and ensure authenticity, all Microsoft software programs must be distributed with a corresponding authorized Microsoft CD-ROM containing the program and other components, such as a COA.  Microsoft designs its software to be copied onto only one computer, and as such each unit of software has a different product identification number and/or key number.  If a genuine unit of software is installed on a computer, it will have a unique number.

At the time of the alleged infringements, Defendant, Affordable Computers, n/k/a A&D Computers, LLC ("Affordable"), located in Austell, Georgia, was in the business of selling and servicing computer systems.  Affordable predominately services customers who call in with computer problems.  Affordable also purchases computers from individuals on a case-by-case basis and then resells them, some of which already have software such as Microsoft office installed.  Affordable claims that it does not install software on these computers; rather, if a computer already has software installed, it will remove it and reinstall it to protect the prior user's privacy.  It then claims to validate the software through www.microsoft.com before reselling it to the public.  Tony and Daphne Moss operated the business and shared responsibility for its overall operation and its liabilities.  They were personally involved in selling computer systems for the business and also had the authority

6

to direct Affordable's employees.  Affordable's success was directly related to Tony and Daphne Moss's own personal finances, and Affordable was Tony's sole source of income.

On April 15, 2005, Microsoft sent Defendants a letter indicating that Microsoft had received a report that Defendants had unlawfully distributed Microsoft software.  The letter informed Defendants that it was a violation of federal copyright and trademark laws to copy unlicensed software onto the hard drives of computer systems and that "[a]ll Microsoft software installed on the hard drive of a computer system must be installed pursuant to a license from Microsoft and must by accompanied by a packaged unit of such software that includes a Certificate of Authenticity (COA)."  [P. Motion S.J.,  Exhibit A].

Despite this warning, between June and August of 2006, Affordable distributed three computers with Microsoft software to investigators working for Microsoft.  These investigators placed orders with Affordable for computers installed with Microsoft software, but the investigators did not receive legitimate Microsoft CD-ROMs or  COAs when they received the computers.  The investigators purchased the computers from a woman who identified herself as "Daphne."  Microsoft determined the installation date of the software and its product and key numbers and concluded that it was counterfeit.

## II.    Discussion

The instant action by Microsoft is similar to many it has filed across the country against Defendants whom it believes are "hard disk loading."  Hard disk loading occurs

when an infringer takes a CD-ROM of Microsoft software, which was licensed for use on only a single computer, and copies it onto numerous systems that they then sell to customers. This process allows infringers to avoid the costs of purchasing multiple copies of the software and thus robs Microsoft of revenue. Microsoft points the court to numerous cases in which it has been successful in winning judgments against hard disk loaders and asks this court to adopt the reasoning of those courts. *See, e.g.*, *Microsoft Corp. v. Compusource Distributors*, 115 F. Supp.2d 800, 809 (E.D. Mich. 2000); *Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077, 1094 (D. Md. 1995). Microsoft points us particularly to the decision in *Microsoft v. Sellers*, 411 F. Supp. 2d 913 (E.D. Tenn. 2006), which the court finds persuasive.

In *Sellers*, the Defendants, two brothers, operated Save More, which primarily engaged in buying salvaged goods from retail stores but also built computer systems for sale. The brothers claimed that they sold approximately thirty-three computers, some with Microsoft software installed. Save More ignored warning letters from Microsoft sent in early 2000 and the fall 2003 and distributed computers with unauthorized Microsoft software to investigators in the summer of 2003 and the spring of 2004. Defendants were aware that they were infringing and described Microsoft's rules as "ridiculous." Defendants also bought and distributed COAs separate from the software they were intended to authenticate and maintained no record of the computers loaded with Microsoft software that

8

they sold.  The court granted summary judgment in favor of the Plaintiff, Microsoft, and awarded $60,000 in damages under the Copyright Act, $400,000 in damages under the Lanham Act, attorney's fees and costs, and a permanent injunction.

The court considers (1) whether Plaintiff has established its prima facie case for violations under the Copyright Act,  the Lanham Act, and its state law claims; (2)  whether Defendants Daphne and Tony Moss may be held individually liable along with Affordable; and (3) the appropriate remedies.

9

### A.      The Prima Facie Case

#### 1.      Copyright Violation

Plaintiff alleges that Defendants infringed nine copyrights in Windows XP, Office 2003 Pro, and the related Office suite of programs, including Word, Excel, etc.[8]  The Copyright Act gives a copyright owner the exclusive right to reproduce and distribute his or her copyrighted works.  17 U.S.C. § 106(1)-(3).  "To prevail on a claim of copyright infringement, a plaintiff must establish ownership of a valid copyright in the work and copying by the defendant."  *Southern Bell Tel. & Tel. Co. v. Tel. Directory Publrs.*, 756 F.2d 801, 810 (11th Cir. 1985).  A defendant engages in "copying" any time it infringes any of the copyright owner's five exclusive rights, described at 17 U.S.C. § 106, which include the right to copy and the right to distribute to the public by sale or other transfer of ownership.

Here, the undisputed evidence presented by Microsoft proves ownership and infringement.  Microsoft submitted copyright registration certificates for  Windows XP, Office 2003 Pro and other related software, allegedly copied by the Defendants.  These registration certificates are prima facie evidence that Plaintiff has valid copyrights in these programs, 17 U.S.C. § 410(c).  Microsoft also offered undisputed evidence that on at least two occasions, Affordable distributed computers installed with Microsoft software without

---

[8]Pursuant to Rule 15(b) of the Federal Rules of Civil Procedure, a party may move at any time to amend the pleadings to conform to the evidence.  The court grants Plaintiff's requests to amend its Complaint to add the copyright for Access 2003, which was unintentionally omitted from its original complaint.

10

legitimate CD-ROMS or COAs.  Defendants contend that there is a question "as to whether they purposefully or even negligently installed Microsoft products onto any computer";[9] however, this does not create a genuine issue of material fact for purposes of summary judgment.  A plaintiff does not have to prove that Defendant knowingly or intentionally copied or distributed Microsoft's software in order to prove copyright and trademark infringement.  17 U.S.C. § 501(a); 15 U.S.C. § 1117(c).

### 2.        Lanham Act Violations

The Lanham Act prohibits trademark infringement and false designation of origin. *See* 15 U.S.C. §§ 1114, 1125.  A party can establish a trademark infringement by showing that (1) it owns a trademark and (2) the infringer used the mark without authorization, in commerce, and in a manner likely to create consumer confusion.  15 U.S.C. § 1114(1)(a); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1307 (11th Cir. 1998).  Registration of a mark is prima facie evidence of the validity of the mark, the facts stated in the registration certificate, and the owner's exclusive right to use the mark for purposes of 15 U.S.C. § 1114(1).  15 U.S.C § 1057(b).  Further, an owner's right to use becomes incontestable after registration and continuous use for five years.  15 U.S.C. § 1065.

Here, Plaintiff's undisputed evidence makes a case for trademark infringement. Microsoft offered certificates to prove it has registered the marks in question and thus has

---

[9]*See* Def.'s Response to P.'s Motion for S.J., at 2.

11

the exclusive right to use them.  Microsoft specifically informed Defendants by letter that they were not authorized to use its software without a valid CD-ROM and COA.  Although Defendants were selling computers out of a single retail store, where the plaintiff is a corporation doing business in numerous states, the case law effectively presumes that even a defendant's intrastate activities have a substantial effect on interstate commerce.  *Sellers*, 411 F. Supp. 2d at 919 (relying on *Grey Computer*, 910 F. Supp. at 1086-87).

Furthermore, Plaintiff presents the quintessential case for customer confusion.  The investigators ordered computers installed with Microsoft software, and they received software that bore all the indicia of genuine Microsoft software.  Microsoft's marks are well known throughout the world.  Distributing software with these marks would lead a reasonable consumer to believe that Microsoft had authorized the distribution, thus creating customer confusion.  "Where one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of and demand for, another's product, there is a presumption of likelihood of confusion."  *See Sellers*, 411 F. Supp. 2d 913 (quoting *Procter & Gamble v. Quality King Dist. Inc*., 123 F. Supp. 2d 108, 115 (E.D.N.Y. 2000)).

A claim for false designation of origin under section 43 of the Lanham Act arises when a person uses in commerce a word, term, name or symbol, or a false or misleading description or representation of fact which is likely to cause confusion or to deceive as to the origin, sponsorship or approval of goods.  15 U.S.C. § 1125(a)(1).  Here, Microsoft has

presented evidence that Affordable distributed counterfeit copies of its software creating the impression that the products were genuine products from Microsoft.  This evidence, offered by Plaintiff to establish trademark infringement, is sufficient to establish false origin.

### 3.      State Law Claims

In its Motion for Summary Judgment, Microsoft mentions its state law claims only briefly and states that a plaintiff may prove a violation of Georgia common law and statutory unfair competition and Georgia's Uniform Deceptive Trade Practices Act ("GUDTPA") using the same elements of a claim under Section 43(a) of the Lanham Act.  *See The Board of Regents of the University of Georgia v. Buzas Baseball, Inc*., 176 F. Supp. 2d 1338, 1351 (N.D. Ga. 2001) (likelihood of confusion test applies to common law claims and GUDTPA); *Computer Currents Publ'g Corp. v. Jaye Communications, Inc.*, 968 F. Supp. 684, 687 (N.D. Ga. 1997) (essence of trademark infringement, unfair competition and GUDTPA is likelihood of confusion).  In its Motion for Summary Judgment, Plaintiff never pleads the specific elements of these state law claims and does not request damages under them.  Thus, the court declines to address these claims.

### B.      Individual Liability

Plaintiff asserts that Defendants, Daphne and Tony Moss, are individually liable for copyright and trademark infringement as well as being liable as individuals, d/b/a Affordable.  "An individual, including a corporate officer, who has the ability to supervise

13

infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for [copyright] infringement." *Southern Bell*, 756 F.2d at 811. "If an individual actively and knowingly caused . . . trademark infringement, he is personally responsible." *Babbit Electronics, Inc. v. Dynascan, Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994). "[A] corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil." *Id.*

Here, Tony and Daphne Moss supervised the activity and controlled the employees at Affordable. The Mosses had a financial interest in the success of Affordable, and it was Tony's sole source of income. Daphne personally participated in the infringement when she sold the computers loaded with the illegal software to investigators. Therefore, the court finds that Tony and Daphne Moss are personally liable under the federal copyright and trademark laws for infringement of Microsoft's intellectual property rights. Therefore, A&D Computers, LLC, is jointly and severally liable with Tony and Daphne Moss individually.

## C.   Remedies

Microsoft requests (1) statutory damages of $270,000 under the Copyright Act, or $30,000 for each of the nine copyrights at issue; (2) statutory damages of $600,000 under the Lanham Act, or $100,000 for each of the six trademarks at issue;[10] (3) costs and

---

[10]Microsoft raises seven trademarks in its complaint, but only request damages for six because the mark "Microsoft" is registered under two different classifications of goods.

attorneys' fees in an amount to be determined; and (4) a permanent injunction against Defendants.

Statutory damages may be appropriate to penalize an infringer and deter future violations or when actual damages would be difficult to calculate. *Cable/Home Communication Corp. v. Network Prods., Inc.*, 902 F.2d 829, 851 (11th Cir. 1990). The court has wide discretion in setting the amount of statutory damages within the limits of the statute. *Id.* at 852. The Copyright Act authorizes statutory damages no less than $750 but no more than $30,000 per act of infringement, and the court may award up to $150,000 per act if it finds willfulness. 17 U.S.C. § 504(c). The Lanham Act authorizes statutory damages no less than $500 but no more than $100,000 per counterfeit mark, per type of good or service sold, and the court may increase damages to $1,000,000 per mark if it finds use of the mark was willful. 15 U.S.C. § 1117(c).

Numerous courts within our district have awarded statutory damages to Microsoft in cases factually analogous to the case before us. *See, e.g.*, *Microsoft Corp. v. Gordon* , No. 1:06-cv-2934-WSD, 2007 U.S. Dist. LEXIS 37849 (N.D. Ga. May 24, 2007) (noting "the absence of any allegation that Defendant operated on a notable, profitable scale" and awarding $5,000 per infringed copyright and $20,000 per counterfeited mark); *Microsoft Corp. v. Wubbena*, No. 1:06-cv-2209-WSD, 2007 U.S. Dist. LEXIS 14257 (N.D. Ga. Feb. 28, 2007) (awarding $15,000 per copyright and $40,000 per counterfeited trademark,

15

noting that "Microsoft has not alleged any facts concerning the scope of Defendants' operations, and has chosen not to pursue damages for willfulness"); *Microsoft Corp. v. Tierra Computer, Inc.*, 184 F. Supp. 2d 1329 (N.D. Ga. 2001) (Thrash, J.) (awarding $30,000 per copyright violation and $100,000 per trademark violation where Defendants violated a permanent injunction and Plaintiff seized approximately 1400 units of counterfeit software and components during a United States Customs Service raid).

Here, as with the cases cited above, it is difficult to gauge the scale of Defendants' infringing conduct because they have not created or maintained sufficient business records. The court cannot determine how many times they distributed unauthorized Microsoft software. Therefore, the court finds statutory damages to be appropriate; however, the court, in its discretion, declines to award the amount requested by Microsoft. The Copyright Act and the Lanham Act authorize a statutory range of damages so that courts may tailor awards to the scope of the conduct and the culpability of the defendant. Microsoft has not alleged that Defendants operated on a grand scale and has offered proof of only two instances in which Affordable sold counterfeit software. Further, it has chosen not to seek willful damages despite stating that Defendants willfully ignored its letter and did not cease sales of counterfeit software. While it is likely that Defendants acted impermissibly on more than two occasions, the court believes a lesser award will still adequately compensate Microsoft

16

and serve as a deterrent to potential offenders.  Thus, the court awards $5000 for each of the nine copyrights and $10,000 for each of the six trademarks for a total award of $105,000.

The Copyright Act authorizes reasonable attorney's fees and costs to prevailing plaintiffs.  17 U.S.C. § 505.  The Lanham Act also authorizes such fees and costs, but limits fees to "exceptional cases."  15 U.S.C. § 1117(a).  A case is "exceptional" when the defendant is warned to cease infringing behavior and persists.  *Gordon*, No. 1:06-cv-2934-WSD, 2007 U.S. Dist. LEXIS 37849, at *6.  Here, Defendants were warned by Microsoft to cease infringing activities and did not.  Thus, the court will award Microsoft costs and attorney's fees under both Acts.  The court directs Plaintiff to file a motion detailing specific fees and costs within thirty days of the date of this order.  All submissions regarding attorney's fees should comply with the law of this Circuit as articulated in *Norman v. Housing Authority*, 836 F.2d 1292 (11th Cir. 1988), and *ACLU v. Barnes*, 168 F.3d 423 (11th Cir. 1999).

The Copyright Act authorizes the Court to grant temporary or final injunctions "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).  The Lanham Act authorizes injunctions "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark . . . ."  15 U.S.C. § 1116(a).  The court GRANTS Plaintiff's request for injunctive relief.

17

IT IS ORDERED that Tony Moss, d/b/a Affordable Computers, n/k/a A&D Computers, LLC; Tony Moss, an individual; Daphne Moss, an individual, d/b/a Affordable Computers, n/k/a A&D Computers, LLC; Daphne Moss, an individual; and A&D Computers, LLC (collectively, "Defendants"), along with their directors, principals, officers, agents, servants, employees, representatives, successors and assigns, and all those persons or entities acting in concert or participation with them, shall be and hereby are PERMANENTLY ENJOINED and restrained from:

(a) imitating, copying, or making any other infringing use or infringing distribution of software programs, components, end user license agreements ("EULAs"), Certificates of Authenticity ("COAs") or items protected by Microsoft's registered trademarks and service mark, including, but not limited to, the following Trademark and/or Service Mark Registration Numbers:

(1) 1,256,083 ("MICROSOFT");

(2) 1,200,236 ("MICROSOFT");

(3) 1,872,264 ("WINDOWS");

(4) 2,744,843 (FLAG DESIGN);

(5) 1,475,795 ("POWERPOINT");

(6) 1,741,086 ("MICROSOFT ACCESS"); and

(7) 2,188,125 ("OUTLOOK");

18

or the software programs, components, EULAs, COAs, items or things protected by the following Certificate of Copyright Registration Nos.:

(1) TX 5-407-055 ("Windows XP Professional");

(2) TX 5-837-617 ("Office Professional Edition 2003");

(3) TX 5-837-636 ("Office Excel 2003");

(4) TX 5-900-087 ("Office Outlook 2003");

(5) TX 5-852-649 ("Office PowerPoint 2003");

(6) TX 5-900-088 ("Office Word 2003");

(7) TX 5-837-618 ("Publisher 2003");

(8) TX 5-877-613 ("Business Contact Manager for Outlook 2003"); and

(9) TX 5-901-713 ("Access 2003");

or any other works now or hereafter protected by any of Microsoft's trademarks or copyrights;

(b) manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any software program, component, EULA, COA, item or thing bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of Microsoft's registered trademarks or service

19

mark, including, but not limited to, the Trademark and Service Mark Registration Nos. listed in Paragraph (a) above;

(c) using any simulation, reproduction, counterfeit, copy, or colorable imitation of Microsoft's registered trademarks or service mark including, but not limited to, the Trademark and Service Mark Registration Nos. listed in Paragraph (a) above, in connection with the manufacture, distribution, offering for distribution, sale, offering for sale, advertisement, promotion, or display of any software, component, EULA, COA, item or thing not authorized or licensed by Microsoft;

(d) using any false designation of origin or false description which can or is likely to lead the trade or public or individuals erroneously to believe that any software, component, EULA, COA, item, or thing has been manufactured, produced, distributed, offered for distribution, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for Microsoft, when such is not true in fact;

(e) using the names, logos, or other variations thereof of any of Microsoft's copyright and/or trademark-protected software programs in any of Defendants' trade or corporate names;

20

(f) engaging in any other activity constituting an infringement of any of Microsoft's trademarks, service mark and/or copyrights, or of Microsoft's rights in, or right to use or to exploit these trademarks, service mark, and/or copyrights, or constituting any dilution of Microsoft's name, reputation, or goodwill; and

(g) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs (a) through (f) above.

### D.    Motion for Sanctions and Motion to Compel

Plaintiff moves the court for sanctions against Earl Moss and Affordable Computers, n/k/a A&D Computers, LLC, for failure to appear at a properly-noticed deposition on January 3, 2007, and requests that the court compel Defendant Earl Moss, individually and d/b/a Affordable Computers, to respond fully to Plaintiff's First Interrogatories and Defendant Affordable Computers to respond fully to Plaintiff's Request for Production of Documents.  Plaintiff requests sanctions in the amount of $202.50 for attorney's fees and $164.05 with respect to the missed deposition.  Earl Moss and Affordable Computers, n/k/a A&D Computers, contend that their failure to attend the deposition on January 3, 2007, was an inadvertent scheduling error, that upon being informed of their mistake they agreed to

come in immediately, and that per Plaintiff's counsel's request they rescheduled and took the depositions on January 8, 2007.

The information Plaintiff has sought to compel is irrelevant to the resolution of this case. Plaintiff has been granted summary judgment in this case with regards to all defendants but Earl Moss, making the requests of Affordable Computers moot. The discovery sought by Plaintiff was not necessary for the court to render summary judgment against the other defendants, and the court does not anticipate that it will need such information to decide the case with regard to Earl Moss. Thus, the motion to compel is DENIED. Plaintiff requests sanctions under Fed. R. Civ. P. 37(d) which directs the court to require the party failing to attend a deposition to pay "the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Defendants' failure to correctly mark their calender was not "substantially justified," and there are no circumstances indicating that this court should not allow Plaintiff's counsel to be compensated for the three hours that he spent traveling to the deposition site, waiting there, and returning. Plaintiff's motion for sanctions is GRANTED in the amount of $366.55.

**III.    Conclusion**

22

The court GRANTS Plaintiff's Motion for Summary Judgment [53].

The court DIRECTS Defendants, jointly and severally, to pay Plaintiff $105,000.

The court DIRECTS Plaintiff to file a Motion for Attorney's Fees pursuant to the local rules within thirty (30) days of the date of this order.

The court DENIED Plaintiff's Motion to Compel [26] as moot.

The court GRANTS Plaintiff's Motion for Sanctions [26] in the amount of $366.55.

Further, the court takes notice of the fact that Plaintiff did not include Earl Moss in its Motion for Summary Judgment, and he remains as a defendant with no judgment pending against him. The court DIRECTS Plaintiff to file a Motion for Summary Judgment, a Motion to Dismiss, or a Pretrial Order with respect to the claim against Earl Moss, individually, and d/b/a Affordable Computers, n/k/a A&D Computers, LLC, within thirty (30) days from the date of this order.

**IT IS SO ORDERED** this 20th day of September 2007.


_____s/ J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

23